We're going to move now to Appeal 25-1313, United States v. Jalal. We'll begin with oral argument, Mr. Glausman, from you. May it please the Court, I am here on behalf of the appellant defendant, Feroz Jalal, who was sentenced to 62 months by the District Court for his participation in a PPP fraud. We're not here to dispute necessarily what he did. He pled guilty and accepted responsibility of it. But the overarching issue that's present in the briefs is the first issue that we brought up, and it was the improper application of the manager-supervisor enhancement. And while that enhancement on its face is only three points to the total adjusted level, in practicality it was a five-point swing because it precluded Mr. Jalal from receiving a zero-point offender, which would have taken his advisory guideline range from 70 to 87 months, like the District Court calculated it to, all the way down to 41 to 51 months. And it's prejudicial because the 62 months is substantially over the high end, and there isn't enough of an explanation on the record for why it should be that high above. And while there are other issues that are brought up in the appeal, I'd like to spend my time focused on that. If we look at the facts presented by the government in their reply brief, in the statement of the case, they essentially concede that Mr. Jalal did four things. That he gathered information and documentation necessary for the submission of false and fraudulent PVP applications, that he procured false documentation needed for lender approval, and that he answered lender questions. Those are the three that he did by himself. And then to conceal the scheme, he used nominees to receive the money and give them the 2.5 percent that he was going to get from the fraudulently obtained money. Now in order for him to be a manager-supervisor, the government focuses their attention on there being an otherwise extensive scheme, which we do not dispute. It was otherwise extensive. There were a lot of co-schemers, though certainly a lot more than five people involved in this. But the issue becomes, did he manage or supervise at least one knowing participant? And that's what note one of the application notes for 3B1.1b says. In order to be a participant, as defined by the guidelines, they have to have criminal responsibility for the commission of the offense. Now the nominees, I believe it's undisputed, even with the government, that they were unwitting participants. And I think that's what the court kind of talked about also. So it doesn't matter how many people Mr. Jalal brought in to help him get the money. If they didn't know what he was doing or why he was doing it for, that is insufficient for him to manage or supervise them as contemplated by the guidelines. And so what this really all centered around was whether or not he was a manager supervisor of a co-defendant named Nafis Usmani. And what the district court rooted its decision on is that Mr. Jalal recruited and instructed Mr. Usmani to restart a dormant corporation and write payroll on checks to make it seem like it was for a payroll. Now those facts were not in his plea agreement, in Mr. Jalal's plea agreement. Those facts are taken from Mr. Usmani's plea agreement. And so- Were those facts also in the PSR? They were taken from the plea agreement, I believe, and put in the PSR. And were those paragraphs of the PSR, I think it was maybe 25, 26, 27, were those paragraphs disputed? I believe the whole issue was disputed about whether it was both a factual and a legal dispute, because if you look at the transcript from the sentencing, the whole argument is going between the defense saying Mr. Jalal was a middleman or broker, just going between the people getting the loans and the people needing the loans, and then the government saying no, he was a manager, a supervisor, and the district court even referenced a government report that was part of the record where it said another individual by the name of Taha was the quote-unquote mastermind. So there was this big dispute, factually and legally, about a difference between coordination between individuals and a command over individuals. And it was Mr. Jalal's position the entire time, this is a coordinated effort within this community of people where everyone had different jobs and they were working in unison, but not one instructing over the other, and that's what the law kind of says, too, is just because you work with- But there's a really, there's a very specific process for both sides to dispute specific numbered paragraphs in the PSR. So can you point to somewhere in the record where Mr. Jalal disputed those numbered paragraphs and the factual statements therein? I don't believe he, in the sentencing memorandum where he specifically said the factual disputes, he did not reference those paragraphs, but the overarching argument of the objection to the guideline, to me, encompassed those, maybe not by specific paragraph number, but by the whole idea. And if your honors look at the district court's order that was docket number 123, where it kind of synthesized its decision into why it believed Mr. Jalal was a manager supervisor, it first talks about him instructing Mr. Usmani to reinstate an active corporation and then accompanying him to the bank, but that's taken directly from, and it's cited in the docket entry, directly from Mr. Usmani's plea agreement, and that's patently unfair to Mr. Jalal because he wasn't a party to the negotiations for that plea agreement. Of course Mr. Usmani's going to want to say, no, someone else told me what to do, someone else took me somewhere, I didn't. That minimizes his conduct, and of course he's going to agree to it. But if there's a dispute on the record that that's not true, that he was just a middleman, he was working in coordination with others, not commanding them, the district court needs to make a finding of reliability to that. And there wasn't because there wasn't a chance to dispute this. Because if you look at past that paragraph where the district court cites docket number 100, which was Mr. Usmani's plea agreement, it then sets off another paragraph about reasons it believed he was a manager supervisor, but none of those rise to that level. The first sentence talks about using nominees, and we know that can't be a basis because they were unwitting participants. Then the second paragraph where it says defendant coordinated and directed actions of co-schemers and it cites page 10 of Mr. Jalal's plea agreement, I went over page 10, I didn't represent Mr. Corbett, I went over that, I don't see where the district court got that from because it's not on page 10 of his plea agreement and nowhere in his factual basis did he say he instructed or commanded anyone. Then the third sentence goes to procuring false and fabricated documents, okay, that doesn't mean he managed or supervised anyone, and the fourth and final one goes to he got a cut of the proceeds. Again, getting a cut of the proceeds does not mean your manager supervised. So when we have the situation where there's, we're conceding otherwise extensive prong and you need to find at least one person that he managed or supervised, we have a group of individuals that everyone acknowledges are unwitting, so they can't be the basis for this, and then when the district court anchors its decision in the plea agreement of someone else, you know, Your Honor, Tableson said that there are other paragraphs in the  It doesn't talk about those in its decision. It literally said, docket 100, which is the plea agreement of Usmani, and if that was the government's position, they should have brought Mr. Usmani in who had waived his Fifth Amendment right at that point, put him on the stand and asked him questions, or put an agent on and said, why is that true, because when there's a dispute, that's the way you deal with it. You get to confront the person saying something that you do not believe true, and this was just a blanket acceptance of what someone else said in a self-serving manner. And if Your Honors don't have any more questions at this time, I'd like to reserve the rest of the time for rebuttal. Very good. Thank you, Mr. Glosman. Ms. Finch will turn to you now for oral argument on behalf of the appellate. Thank you, Your Honor, and good morning. May it please the Court. Your Honors, the defendant does not dispute that the otherwise extensive prong of the manager-supervisor enhancement applies. Under that enhancement, the defendant need only manage one other knowing participant in order for the enhancement to apply. Here that is Mr. Usmani. It is replete through the PSR, which was undisputed, and the Court is allowed to take those undisputed facts in the PSR as findings of fact. There was no question of the reliability of the use of Mr. Usmani's plea agreement at the district court. This is the first time this issue has been raised. It was cited in the order that the district court issued after the sentencing, and there is no reason to question its reliability. The defendant did not, and in addition, those facts are undisputed in the PSR. Do you have a sense, counsel, for why that written order cited only Usmani's plea agreement to support those factual findings? It didn't look like the issue of Usmani's plea agreement was fronted at the sentencing for Mr. Jalal. It was not. To be clear, I did not represent the government at the underlying proceeding, but it is not, the plea agreement was not discussed at the sentencing. If there are no further questions, Your Honor, the government requests that you affirm defendant's below guideline sentence. Thank you, Ms. Finch. Thank you. Mr. Glossman, let's move to you now for a bundle argument. Your Honor, I'll try to keep this short, but it'll be hard to do it shorter than Ms. Finch. But the one thing I want to say is the order where the judge cited Mr. Usmani's plea agreement, which was the first time that it came up, as the government conceded, came after sentencing. So there wasn't even an opportunity for Mr. Jalal to object to that at sentencing. He had been sentenced to 62 months. That wasn't discussed at sentencing, and then after he's sentenced, we get this order that says a plea agreement was used. So he didn't even get a chance to dispute it. So at the very least, if there's not clear error that it was applied improperly here, this should be remanded for determination by the district court as to why it only relied on a plea agreement that was not mentioned during the sentencing process and allow Mr. Jalal to challenge its reliability of something that was agreed upon in a self-serving manner by someone else. Thank you, Mr. Glossman. Thank you, Ms. Finch. The case will be taken under advisement.